158 So.2d 79 (1963)
Jessie COVINGTON
v.
SOUTHERN SPECIALTY SALES COMPANY, Inc., et al.
No. 5968.
Court of Appeal of Louisiana, First Circuit.
November 12, 1963.
*80 Brumfield, Turner & Cooper, by Sylvia Roberts, Baton Rouge, for appellant.
Watson, Blanche, Wilson, Posner & Thibaut, by David W. Robinson, Durrett, Hardin, Hunter, Dameron & Fritchie, by Ben W. Lightfoot, Baton Rouge, for appellees.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
LANDRY, Judge.
Jessie Covington, a mechanic in the employ of Miranda Sales Company, a retail seller of lawn mowers, Baton Rouge Louisiana, instituted this action seeking damages for personal injuries resulting from an accident which occurred during the course of his employment on June 5, 1959, when the pull or starter rope of a Roto Clipper lawn mower, on which he was working, became fouled striking petitioner on the leg. Named defendants herein are Clinton Engine Corporation, a foreign corporation having its principal place of business in Maquoketa, Iowa, manufacturer of the gasoline engine forming a component of the lawn mower in question; Falls Products, Inc., a foreign corporation domiciled in Genoa, Illinois, manufacturer of lawn mowers sold under the trade name Roto Clipper; and Southern Specialty Sales Company, Inc., a Louisiana corporation domiciled in Orleans Parish, Louisiana, distributor for Clinton Engine Corporation. Hardware Mutual Casualty Company, workmen's compensation insurer of plaintiff's employer, intervened in the action praying for reimbursement of workmen's compensation benefits paid plaintiff in the event plaintiff should prevail herein.
*81 As amended and supplemented, plaintiff's petition alleges defendants, Clinton Engine Corporation and Falls Products Company, Inc., though both foreign corporations are actually engaged in business activities within this state. For a cause of action against defendant, Clinton Engine Corporation, it is asserted said defendant was negligent in designing and manufacturing the engine so that it did not function properly and therefore constituted a trap or dangerous device. Additional negligence as to this defendant is charged to the effect said defendant failed to warn users of the inherent vices and defects in its engine and affixing and attaching thereto a starter or pull rope which was defective and unfit for the purpose for which it was intended. The negligence of defendant, Falls Products Company, Inc., is its alleged use of a defective engine in its lawn mower and its failure to warn users of the inherently dangerous nature of the device.
Defendants, Clinton Engine Corporation and Falls Products, Inc., sometimes hereinafter referred to simply as "Clinton" and "Falls", respectively, excepted to the citation served upon them through the Secretary of State and to the trial court's jurisdiction ratione personae contending in essence they are foreign corporations not engaged in business activity within the state and therefore not amenable or subject to suit in the courts of this state. The trial court sustained the aforesaid exceptions and dismissed plaintiff's complaint as to Clinton and Falls, hence this appeal by plaintiff.
In his brief before this court, learned counsel for appellant maintains our esteemed brother below erred in two respects, namely: (1) Finding defendants, Clinton and Falls, were not doing business in Louisiana and therefore not amenable to suit in the courts of this state contrary to the provisions of LSA-R.S. 13:3471(1) and the prevailing jurisprudence; and (2) Applying the provisions of LSA-R.S. 12:211 which regulates the right of a foreign corporation to institute suit in the courts of this state, which latter statute is inapposite considering the present action is not one by a foreign corporation but rather one against a foreign corporation by a citizen of this state.
This appeal presents but a single issue, namely, whether defendants Clinton and Falls have engaged in such business activity within this state as to subject their respective persons to the jurisdiction of our courts. Stated otherwise the sole question before us may be said to be whether the nature of the activity conducted by Clinton and Falls within this state has made them amenable to suit in which personal judgment may be rendered against them by virtue of substituted service made upon the Secretary of State as provided for by applicable state statute.
Involved herein is the principle of due process of law contained in the Fourteenth Amendment to the Constitution of the United States as interpreted in the landmark case of Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, wherein the Supreme Court of the United States in effect held the due process clause of the Federal Constitution places some limitations and restrictions on the power of state courts to enter binding judgments against defendants not served with process within their boundaries.
Since Pennoyer v. Neff, supra, however, the Federal Supreme Court has, to considerable degree, modified and liberalized the effect of its holding therein so as to expand and enlarge the jurisdiction of state courts over the persons of foreign corporations and other non-residents.
In the case of International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057, the question presented was the amenability of a Delaware corporation to suit in the courts of the State of Washington in an action seeking recovery of unpaid contributions to the state unemployment compensation fund. The corporation involved manufactured shoes in Missouri and several states other than Washington and its merchandise *82 was distributed in interstate commerce through numerous sales branches located outside Washington State. The corporation in question had no office within the state and made no contracts of sales or purchases there. It maintained no stock of merchandise within the state and made no intrastate deliveries within the boundaries of Washington. The corporation did, however, employ resident salesmen in the State of Washington, their compensation being on a commission basis and their authority being limited to showing samples and soliciting orders which were transmitted to St. Louis, Missouri, for acceptance or rejection by the corporation. Upon acceptance of an order, the merchandise was shipped f. o. b. from points outside Washington to the purchasers within the state. No salesman was authorized to enter into contracts or make collections and all merchandise shipped into Washington was invoiced at the place of shipment. Nevertheless, the court therein held the activities of the corporation were systematic and continuous and resulted in a large volume of interstate business in the conduct of which the corporation received the benefits and protection of the laws of Washington, including the privilege of resort to the courts of the state for enforcement of its rights. In substance, the court held due process does not require "consent", "doing business" and "presence" as the criteria for determining the extent of state judicial power over non-residents but only that, if the individual be not present within the territory of the forum, he have certain minimum contacts within the state so as not to offend traditional concepts of fair play and substantial justice. The court then held the standards of fair play and substantial justice were satisfied and the corporation was adjudged amenable to proceedings in the State of Washington without abridgment of the concept of due process as established by the Fourteenth Amendment to the Federal Constitution.
Following International Shoe Company v. Washington, supra, the Supreme Court of the United States was again confronted with the identical issue in McGee v. International Life Ins. Co., 355 U.S. 220, 78 S. Ct. 199, 2 L.Ed.2d 223, wherein a Texas corporation was sued in California upon a claim arising from a reinsurance certificate issued to a California resident upon assumption by the Texas corporation of the obligations of an Arizona insurance company. Neither the Texas nor the Arizona corporation had offices in California and no insurance business was transacted or solicited in California excepting the single policy involved in the suit. In adjudicating the question thus presented, the Supreme Court traced the development of the concept of a state's jurisdiction over nonresidents and broadened the scope of the several states' jurisdiction in such cases as follows:
"Since Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, this Court has held that the Due Process Clause of the Fourteenth Amendment places some limit on the power of state courts to enter binding judgments against persons not served with process within their boundaries. But just where this line of limitation falls has been the subject of prolific controversy, particularly with respect to foreign corporations. In a continuing process of evolution this Court accepted and then abandoned `consent,' `doing business,' and `presence' as the standard for measuring the extent of state judicial power over such corporations. See Henderson, The Position of Foreign Corporations in American Constitutional Law, c. V. More recently in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 [161 A.L.R. 1057], the Court decided that `due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair *83 play and substantial justice."' Id. 326 U.S. at page 316, 66 S.Ct. at page 158 [90 L.Ed. 95].
"Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity."
The court then found the Texas corporation enjoyed substantial connection with the State of California in that the contract of insurance was delivered in California, premiums were mailed from there and the Insured was a resident of that state when he died. (Emphasis added).
In our own state the issue is controlled by the Supplementary Rules of Service of Process as set forth in LSA-R.S. 13:3471, as amended by Act 32 of 1960, the applicable portion of which reads as follows:
"§ 3471. Supplementary rules of service of process
"The following rules supplement those governing the service of citation and other legal process in a civil action or proceeding contained in the Code of Civil Procedure:
"(1) If the foreign corporation is not one required by law to appoint an agent for the service of process, but has engaged in a business activity in this state, service of process in an action or proceeding on a cause of action resulting from such business activity in this state, or for any taxes due or other obligations arising therefrom, may be made on any employee or agent of the corporation of suitable age and discretion found in the state. If such employees or agents are no longer in the state, or cannot be found after diligent effort, the officer charged with the duty of making the service shall make his return to the court, stating the efforts made by him to secure service and the reason why he was unable to do so. Thereupon the court shall order that service shall be made on the secretary of state, or on some other individual in his office whom the secretary of state may designate to receive service of process. The secretary of state shall ascertain the domiciliary post office address of the corporation, and shall send the original papers served to the corporation by registered mail, with return receipt requested. The secretary of state shall retain in his office true copies of these papers, on which he shall note the date, the manner and other particulars of the service, and of the disposition made of the original papers." (Emphasis added.)
Interpretation of the foregoing statutory provision must necessarily include careful consideration of the explanatory note following LSA-R.S. 13:3471 which states:

"Explanatory note

Henry G. McMahon
"Portions of the former LSA-R.S. 13:3471 are replaced by Arts. 42, 1203, 1231-1234, 1261-1265, 1291, 1292, 1314, 2412, LSA-Code of Civil Procedure.
"This section was amended on the recommendation of the Louisiana State Law Institute to retain the statutory rules supplementing the provisions of Arts. 1201-1314, LSA-Code of Civil Procedure, on Citation and *84 Service of Process. The last six subsections of this amended section are merely an editorial revision and rearrangement of former subsections which were not transferred to LSA-Code of Civil Procedure, but which were needed sufficiently to warrant retention.
"The first subsection of this amended section makes two important changes in the procedural law. First, it permits the courts of Louisiana, under Art. 6 (1), LSA-Code of Civil Procedure, to exercise the full potential of jurisdiction in personam over foreign corporations allowed by recent decisions of the United States Supreme Court, and particularly by International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R 1057, and McGee v International Life Insurance Co., 1957, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223. This amended section provides the method of service on a foreign corporation which is doing or has done some business in this state, interstate in character or otherwise, but which is not doing or has not done sufficient intrastate business to require a license to do business here, and the appointment of an agent for the service of process. Cf. Arts. 1261, 1262, LSA-Code of Civil Procedure. Second, this amended subsection drops the prior requirement that the business activity in this state be done by the corporation's agents or employees in Louisiana, and thus overrules legislatively Johnson v. El Dorado Creosoting Co., [La.] App. 1954, 71 So.2d 613." (Emphasis added).
It appears clear beyond all question the legislature of this state intended LSA-R.S. 13:3471(1), as amended by Act 32 of 1960, to constitute a mandate to the courts to exercise to the fullest possible extent the broadened scope of jurisdiction over foreign corporations as extended and enlarged by the International Shoe Company and McGee cases, supra.
Hattiesburg Manufacturing Company v. Pepe, La.App., 140 So.2d 449, cited and relied upon by our esteemed brother below is inapposite. The cited authority dealt with an entirely different factual situation, namely, the right of a foreign corporation to institute an action on its own behalf notwithstanding its failure to qualify as a foreign corporation doing business within the state. No useful purpose would be served by detailing the factual distinctions between the Pepe case, supra, and the case presently at bar. It suffices to say we are herein concerned not with an action by a corporation but an action against a foreign corporation and therein lies a distinction necessitating the application of different rules of law. The distinction between casees involving the question of a corporation's doing business within a state for purposes of personal jurisdiction and service of process on the corporation and actions wherein the issue is the corporation's compliance with local statutes as a condition precedent to entering suit on its own behalf, is plain and unmistakable. A clear, concise and enlightening explanation of the difference noted is found in 146 A.L.R. 942, from which we approvingly quote the following:
"As previously pointed out, whether or not a foreign corporation is `doing business' within a state depends upon the issues involved in the proceeding in which the question is raised. Thus, it has been frequently stated that a corporation may be doing business of functioning within a state so as to be subject to the jurisdiction of the state courts and amenable to service of process therein and yet not be subject to a statute regulating foreign corporations or prescribing the conditions of their doing business within the state, the difference being attributable to the fact that the power of a state to subject a foreign corporation to local regulations is restricted by the commerce *85 clause of the Federal Constitution, whereas a state may subject a foreign corporation which is `present' or `found' operating within its borders to service of process, notwithstanding that its local activities are confined to transactions in interstate commerce, the state's power to provide for service of process not being affected by the commerce clause of the Federal Constitution. * * *"
It follows that the test to be applied to the corporations against which personal judgment is sought herein is simply whether each said defendant maintain "certain minimum contacts" with the state of the forum so that institution of this action does not offend "traditional concepts of fair play and substantial justice" insofar as concerns each individually. Whether either defendant meets the necessary qualification of "minimum contacts" is a matter of factual determination to be resolved in the light and circumstances of each individual case. People's Tobacco Company v. American Tobacco Company, 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587; Calcote v. Century Indemnity Company, La.App., 93 So.2d 271; Home Gas and Fuel Company v. Mississippi Tank Co., La.App., 143 So.2d 641.
Since appellees, Clinton and Falls, are separate and distinct entities bearing absolutely no corporate relationship to each other it becomes necessary to examine the facts and circumstances as they apply to each said defendant individually.
We shall first consider the facts and circumstances relative to the position of Clinton as revealed solely in the deposition of Bernard A. Noonan, Vice President of the Replacement, Sales and Service Division of the corporation. According to Mr. Noonan, Clinton maintains two executive officesone in New York City and one in Maquoketa, Iowaand is incorporated under the laws of the State of Michigan. Clinton does not engage in activities within the State of Louisiana of such nature and extent as to subject it to the necessity of compliance with local statutes establishing prerequisites to the conduct of intrastate business within Louisiana. It owns no real estate in Louisiana, it does not use, lease or rent land, offices, stores or warehouses in Louisiana. Moreover, it has no resident agent or agents and maintains no bank account in this state.
The corporation employs a district sales and service manager who resides in Dallas, Texas. This representative works under direct supervision of the Maquoketa office, and makes periodic calls in Louisiana once every four or five weeks. The purpose of these regular calls is to assist the company's central warehouse distributor, Southern Specialty Sales Company, New Orleans, Louisiana, and approximately 140 Clinton service centers established in Louisiana, by service agreements executed between Southern Specialty Sales Company and independent operators, for the sale and servicing of Clinton products. Southern Specialty Sales Company, sometimes hereinafter referred to simply as "Southern", which, incidentally, is a co-defendant herein, is a central warehouse distributor who handles products other than those manufactured by Clinton. According to Noonan, Southern's chief function is to act as a source of supply for service accounts in the Louisiana area, the established order of business being that Southern would order from Clinton the products desired whereupon the merchandise is shipped to Southern F.O.B. Maquoketa. Southern would then distribute the goods to the local service centers. No goods were shipped directly from Clinton to the local service centers.
The duties of the district sales and service manager are to assist the central warehouse distributor (Southern) and the various Clinton Service Centers by giving technical information regarding products, parts information, educational instruction and assistance in making up their orders to Southern. Additionally, the sales and service manager calls on small original *86 equipment manufacturers in Louisiana but takes no orders from anyone. Orders by original equipment manufacturers for Clinton products are placed directly with Clinton.
Under the circumstances shown there can be little doubt but that defendant Clinton sells a considerable volume of its products within the state considering there are admittedly more than 140 establishments in Louisiana devoted to the sale and servicing of its merchandise. To promote the sale of its wares it engaged a representative who every four or five weeks comes into the state for the express purpose of contacting not only Clinton's central warehouse distributor in New Orleans but also the sales and service centers operated pursuant to service agreements with its central warehouse distributor as well as original equipment manufacturers. It can hardly be argued the calls made upon these service centers and original equipment manufacturers to furnish technical aid, parts information, educational information and assistance in ordering defendant's merchandise does not constitute engaging in a business activity and does not promote and foster good will toward defendant and its products. The fact that no orders are taken by the sales and service representative is of no moment. The sole purpose of these comparatively frequent visits to the state can only be to foster knowledge of defendant's products among potential customers and thus promote desire and demand therefor leading to increased sales redounding to defendant's financial gain.
We unhesitatingly conclude such business activity meets the requirement of minimum contacts within the state so as to fully satisfy traditional concepts of fair play and substantial justice as expanded and enlarged in the recent United States Supreme Court decisions. See McGee v. International Life Ins. Co., supra.
Alternatively, counsel for Clinton maintains the Louisiana courts are without jurisdiction ratione personae because the cause of action herein asserted is not shown to have arisen out of the business activity conducted by defendant in the state. In this connection esteemed counsel maintains LSA-R.S. 13:3471(1) permits a defendant to be sued only on a cause of action resulting from a business activity in this state which means there must be a connection between the business activity conducted in the state by defendant and the cause of action sued upon by plaintiff. Esteemed counsel next argues there is no allegation or proof of the means by which the allegedly defective engine entered this state or any contact by defendant or its representative with plaintiff or plaintiff's employer.
While it is quite true, as contended by able counsel, Clinton's traveling representative did not in fact consummate sales in Louisiana, the only possible purposes of his regular visits to this state were to promote and foster knowledge of and desire and demand for defendant's engines. His comparatively frequent trips to this state and the expense attendant thereto cannot conceivably be justified on any other basis. Although counsel forcefully argues Clinton has no agents or representatives in the state because Southern, reputedly an independent distributor, has in turn engaged the services of independent sales and service establishments or outlets, the conclusion advanced does not necessarily follow. By virtue of a contract with Clinton, Southern represents Clinton in the state, distributes its products and has authority to create factory approved sale and service of Clinton's products. The entire arrangement implies a considerable volume of business performed in the State of Louisiana over which Clinton has retained an appreciable degree of control by virtue of comparatively frequent contact within the state on the part of defendant's duly authorized sales and service manager. The sales and service centers handling Clinton's engines are visited periodically for the purpose of promoting the sale of defendant's goods.
*87 While it does not affirmatively appear the engine in question was sold in Louisiana as the result of the activities of Clinton's sales representative, as herein previously shown, it is conceded defendant's sales representative calls on defendant's distributor as well as numerous retail dealers handling defendant's engines for the express purpose of encouraging and promoting the sales of defendant's products by furnishing detailed technical advice and assistance in the use, servicing and ordering thereof. Under such circumstances, it is clear the actions of defendant's sales representatives unquestionably increased, to considerable degree, good will toward defendant and its products with consequent significant effect upon the extent of the use of defendant's goods and the volume of defendant's merchandise sold in the state. Considering such circumstances, we believe it cannot be logically contended the sale of the engine in question and its use within this state did not result from and was not incident to the activity of defendant's agents.
A similar contention, under circumstances almost identical to those involved in the case at bar, was rejected by the United States District Court in Green v. Equitable Powder Mfg. Co., 99 F.Supp. 237, which involved an action filed in the state of Arkansas. In the Green case, supra, suit was filed against the manufacturer of an allegedly defective blasting cap. The defendant therein regularly employed sales representatives to call on various distributors in the State of Arkansas but who took no orders from the distributors for defendant's products. The court found the chief function of defendant's agents to be promotion of sales by creating good will and confidence of the public in the value, worth and usefulness of defendant's products. The company maintained a shooting preserve in Arkansas where various division heads and executives entertained their personal friends and customers. No sales were attempted to be made during the visits of such persons, whether from Arkansas or elsewhere, it being conceded each guest was extended every courtesy to insure his comfort and a successful hunt. The defendant maintained it was not doing business in Arkansas and, alternatively, the cause of action asserted did not accrue from nor was it incident to the activity of its employees in Arkansas. The court answered defendant's contention as follows:
"The operation of the (private shooting preserve) no doubt did increase to a considerable extent the good will towards the defendant and its products and, while the traveling representatives of the defendant did not in fact consummate any sales in Arkansas, their work must have profoundly affected the extent of the use of the products of the defendant and its various divisions in the State of Arkansas. Under these facts, it cannot be said that the sale of the alleged offending blasting cap allegedly manufactured by the * * * defendant * * * and its use by the plaintiff was not an incident to the activity and service of the defendant, its agents, servants and employees." (Emphasis added.)
We believe the same may be said of the instant case. Although the traveling representative of Clinton did not in fact consummate sales in Louisiana, his work undoubtedly had considerable effect upon the extent of the use of defendant's products in Louisiana. His comparatively frequent presence in Louisiana and the expense to defendant incident thereto, could not otherwise be justified.
The facts pertaining to the business activity conducted by defendant, Falls Products, Inc., within this state appear by way of deposition of F. W. Luckner, comptroller of that corporation. Falls is incorporated under the laws of the State of Illinois. Its principal office is in Genoa, Illinois, and its business is the sale of lawnmowers. The corporation has never *88 qualified to do business in Louisiana and has not designated an agent for service of process upon it in this state. It has never stored or warehoused any of its merchandise within the territorial jurisdiction of Louisiana nor has it ever bought any real estate or used, rented, leased or owned any land, offices, stores, or warehouses in Louisiana. In the foregoing respects its operations closely approximate those of Clinton. Falls has no resident salesmen in Louisiana but utilizes the services of a manufacturer's representative, Ralph Russell and Associates, having headquarters in Dallas, Texas, to contact prospective customers in Louisiana. The aforesaid sales representatives visit Louisiana once or twice annually, at intermediate intervals, and make calls on potential lawn mower customers at the same time as they make calls for other firms they represent, thus selling products of more than one firm. The sales representatives are authorized to and take orders from customers desiring to purchase lawn mowers manufactured by Falls which orders are forwarded to Genoa, Illinois for approval and, if accepted, the transaction is completed by delivery of the merchandise to a common carrier in Illinois for shipment to the buyer.
While the record does not indicate contact by Falls within the State of Louisiana beyond the indicated visits of the aforementioned nonresident manufacturer's representative and neither is it shown with certainty the volume of Louisiana business thusly produced, nevertheless, it affirmatively appears this method of operation resulted in sales to Louisiana customers. In this connection, it is significant to note defendant's concession that the mower which allegedly caused plaintiff's injury, though manufactured and assembled by Falls outside Louisiana, was in fact sold to plaintiff's employer, Miranda Sales Company, by Southern Specialty Sales, a distributor.
Prior to the more recent jurisprudence established by the United States Supreme Court, when the criteria determinative of personal jurisdiction was "implied consent" or "corporate presence" in the state of the forum, mere solicitation within a state by a nonresident salesman of orders for merchandise to be shipped from another state, did not constitute doing business to the extent of rendering a corporation amenable to service of process therein. For an excellent discussion of the subject matter see 146 A.L.R. 941. But, as herein previously shown, the test to be applied is no longer "corporate presence" or "implied consent" but rather "minimum contact" necessary to support "traditional concepts of fair play and substantial justice" concerning which the United States Supreme Court stated in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1238, as follows:
"* * * As technological progress has increased the flow of commerce between States, the need for jurisdiction over nonresidents has undergone a similar increase. At the same time, progress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome. In response to these changes, the requirements for personal jurisdiction over nonresidents have evolved from the rigid rule of Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565, to the flexible standard of International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 [161 A.L.R. 1057]. But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. See Vanderbilt v. Vanderbilt, 354 U.S. 416, 418, 77 S.Ct. 1360, 1362, 1 L.Ed.2d 1456 [1459]. Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the "minimal contacts" with that *89 State that are prerequisite to its exercise of power over him. See International Shoe Co. v. State of Washington, 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95 [103], 161 A.L.R. 1057]."
Granting the Supreme Court found an absence of the prerequisite minimal contacts in the Hanson case, supra, the facts of the cited authority are clearly distinguishable from the case at bar. In the Hanson case it was affirmatively found the defendant solicited no business in the state of the forum either in person or by mail. The sole contact of the defendant trust company therein involved was through the settlor of a trust who, after establishing a trust in Delaware, moved to Florida (the state of the forum) and therein exercised a retained inter vivos power of appointment. The trustee sought to be made defendant had no connection whatsoever with the state of Florida and the court concluded "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of the contract with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."
In the case at bar the situation is vastly different from that found by the court in the Hanson case, supra. The present defendant's voluntary act of sending sales representatives into this state for the express purpose of soliciting sales of defendant's merchandise admittedly resulting in sales of defendant's products, in our judgment, satisfies the requirement of minimal contact necessary to render Falls amenable to the jurisdiction of our courts without doing violence to the traditional notions of fair play and substantial justice guaranteed by the due process clause of the Fourteenth Amendment to the Federal Constitution. Here defendant Falls has intentionally, deliberately and purposefully availed itself of the privilege of conducting a direct sales campaign to promote sales of its products within the state by personal contact with prospective or potential customers thus invoking the benefits and protections of our laws. This is no unilateral action on plaintiff's part as was rightfully condemned in the Hanson case, supra, but rather a voluntary entry into the state by defendant through duly constituted agents and representatives appointed for the sole express purpose of selling defendant's products.
It is to be noted the accident in question occurred prior to the effective date of Act 32 of 1960, which last amended LSA-R.S. 13:3471(1). Such circumstance, however, is of no moment considering it is purely procedural in nature and changes no substantive right possessed by defendants. See above footnote of Professor Henry George McMahon. Being remedial, it must be accorded retrospective operation in the absence of clear legislative intent to the contrary. Orleans Parish School Board v. Manson, 241 La. 1029, 132 So.2d 885; Manuel v. Carolina Casualty Insurance Company, La.App., 136 So. 2d 275; Fullilove v. U. S. Casualty Company of New York, La.App., 129 So.2d 816.
Accordingly, it is ordered, adjudged and decreed the judgment of the trial court sustaining the exceptions to the service of process and exceptions to the jurisdiction ratione personae filed on behalf of defendants, Clinton Engine Corporation and Falls Products, Inc., be and the same is hereby annulled, reversed and set aside and judgment rendered herein in favor of plaintiff, Jessie Covington, and against said defendants, Clinton Engine Corporation and Falls Products, Inc., overruling said exceptions and remanding this cause to the lower court for further proceedings conformable to the views herein set forth.
Reversed and remanded. *149