TATE, Judge
(concurring).
The landowner sues to recover damages to his tract caused by unsuccessful mineral drilling operations, principally three pits which must he dredged of waste and refilled with dirt and relevelled. Pie originally sued not only the present appellant (“Yates”), the drilling contractor who actually caused the damage, hut also several non-residents, including the holder of the mineral lease, R. E. Williams, d/b/a R. E. Williams Drilling Company (hereinafter “Williams”). The trial court orally maintained an exception dismissing Williams from the suit, based upon the court’s lack of personal jurisdiction over them (a point to which I shall refer again before concluding).
The trial court held Yates liable for the proven damages of $2,875 caused to the plaintiff landowner’s tract by Yates’s operations. On Yates’s appeal, we have reversed and have dismissed the landowner’s suit against this drilling contractor on the ground that Yates had a contractual right to cause the damage to the land but was under no contractual obligation to repair it.
The writer agrees with this majority holding, although for slightly different reasons: By the “save harmless” clause in the drilling contract between Williams and Yates, Yates had agreed to indemnify Williams from all claims of third parties on account of property damage arising out of the work to be performed by the contractor “resulting from the negligent acts or omissions of the contractor.” Since the record fails to show that any of the property damage was caused by any negligence of Yates, for this reason only I do not agree with the position of our dissenting brother that the agreement in question amounted to a stipulation in favor of the landowner. If Yates was obligated to Williams to repair the type of damage here caused, I agree with the dissenting position that this obligation, although in terms indemnifying Williams only, nevertheless would be enforceable by the landowner as the stipulation’s third party beneficiary.
Williams is undoubtedly liable to the landowner-plaintiff for any failure to repair the damage to the land caused by the drilling operations. However, I have been unable to find any provision of the drilling contract between Yates and Williams or any principle of law by which Yates is obligated to refill the drilling pits constructed by Yates pursuant to the contractual authorization conferred by the lease between the plaintiff-landowner and Williams, the mineral lessee. This right was exercised by Yates as Williams’s independent contractor.
Under the present facts, it seems inequitable to me to allow Yates to exercise the benefits under the mineral lease, the right to drill, and nevertheless not to be subject to the lease’s obligations, the restoration of the tract. It would seem that the exercise of rights conferred by the lease should be conditioned upon complying with the duties correlative with such rights.
Again, it might seem that the landowner-plaintiff, as a third person to the Yates-Williams drilling contract, should be able to force Yates either to repair any damage caused by Yates as a result of that contract to which the landowner was not a party, or to call Williams into the suit to do so or else defend on the basis of the mineral lease. Yates relies upon the mineral lease, to which Yates is not a party, to justify his going onto the premises and causing the damage as Williams’s independent contractor. However, Yates avoids the consequent responsibilities of the very lease upon which he relies, by pleading that he is not obligated to repair the damages under the Yates-Williams contract (to which the landowner is not a partyj.
*67 There is thus a great deal of common sense and equity to sustain the holding of the trial court and the view of our dissenting brother that the drilling contract and the mineral lease are so intertwined that the exercise of lease rights through the drilling contract subjects the user to the same obligations to the landowner as if the lessee himself had exercised them (whatever the rights inter se of the drilling contractor and the lessee). If for instance a mineral lessee for a lump sum sold all future production from a producing oil well and then became insolvent, I do not suppose the purchaser could escape an obligation to pay royalties to the landowner upon some theory that a bona fide contract of sale between the lessee and the purchaser had deprived the landowner of any right to receive mineral royalties produced from his land by reason of the lease.
Nevertheless, at the present time I have been unable to ascertain any legal authority by which Yates, an independent contractor exercising Williams’s lease rights to go upon the land and dig drilling pits, is obligated by reason of so doing to fulfill Williams’s corresponding lease obligations to refill these same pits when drilling operations are concluded.
I do notice, however, that Williams is apparently still a party to the suit below. Although the lower court orally dismissed Williams and other non-residents from the suit, no signed judgment to such effect was rendered, and thus apparently the suit is still pending against Williams. See, e. g., Fisher v. Rollins, 231 La. 252, 91 So.2d 28. This being so, upon application for new trial or otherwise, it is possible that the trial court may be able to reconsider its ruling dismissing Williams from the suit because of a lack of jurisdiction over this non-resident, in the light of LSA-R.S. 13:3201(e) as amended by Act 47 of 1964, conferring jurisdiction over causes of action arising from a non-resident’s “having an interest in, using, or possessing a real right or immovable property in this state”, see Reporter’s Comment (e); this long-arm procedural statute being presumably retrospective in operation so as to apply to causes of action arising before its enactment, see Covington v. Southern Specialty Sales Co., La.App. 1 Cir., 158 So.2d 79, 89, see also McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223, 1957 (syllabi 4, 5).
I respectfully concur.