CHASEZ, Judge.
Meyer Katz, a furniture dealer, sued Liberty Loan Corporation of Louisiana, Inc., Liberty Loan Corporation of Westwego, Inc., and Liberty Loan Corporation, a foreign Corporation, for breach of a contract between the plaintiff and Parliament Loan Company No. 3, Inc. and Parliament Loan Company No. 2, Inc., the predecessors of Liberty Loan Company of Louisiana, Inc., and Liberty Loan Company of Westwego, Inc., respectively.
The contract set forth the terms to govern anticipated sales of promissory notes or contracts from the “Dealer” (Meyer Katz) to the “Assignee”, Parliament Loan Companies Nos. 2 and 3 and their successors, hereinafter referred to as Liberty Loan. The notes or contracts were obtained by Meyer Katz in the course *551 of sales of furniture to his customers. The contract did not obligate Meyer Katz to transfer any notes to the loan companies, but any such transfers which did occur subsequent to the agreement were to be governed by its terms. According to the contract, the purchase price was to be an amount 12% less than the face value of the note or contract. 10% of the purchase price on each note or contract was to be retained by Liberty Loan in older to set up a single reserve or a contingent credit fund. This reserve was to be used in the following manner:
(C) USE OF RESERVE. If, with respect to any note or contract sold and transferred to the Assignee hereunder, the customer shall default in the payment of the same or there shall be a breach of any of the Dealer’s warranties herein set forth or such note or contract shall be or become unacceptable to the as-signee for any reason, then the Assignee may charge such note or contract against the Reserve by deducting from the Reserve the following amount, unless the dealer shall elect to pay the same from funds in the Dealer’s possession, in either of which events the Dealer shall be deemed to have repurchased said Note or Contract * * *
AMOUNT CHARGEABLE OR PAYABLE: Balance due on said note or contract at the time deemed chargeable to the reserve fund by “the assignee” * *
The following provisions also appear:
(D) REPORTING. As of a “Base Date” which shall be July 1, January 1, the Assignee shall make a report to the Dealer regarding the Reserve, provided the Dealer shall have made written request therefor within 30 days before the base date. The Assignee shall have 30 days after the base date in which to make the report. The report shall show as of the base date the amount of the “Excess Reserve”, meaning the amount by which the balance in the Reserve, after deducting all charges made against it, exceeds 10% of the sum of the balances outstanding on all notes and accounts sold hereunder which have not been repurchased by the Dealer.
(E)REMITTANCES. With each such report the Assignee shall remit to the Dealer any excess Resérve thereby shown to exist; provided that from and after the service of notice of termination of this Agreement the Assignee shall be under no obligation to make any remittances to the Dealer until each of the aforesaid notes and accounts has either been paid in full or repurchased as aforesaid. At the latter time, the Assignee shall remit the remainder of the Reserve to the Dealer; provided that if the Dealer is under obligation to the As-signee by virtue of another .agreement than this, or to an affiliate of the As-signee, then the Assignee may in the first case continue to hold the remainder of the Reserve and may in the second case remit such remainder to its said affiliate, as security for that obligation.
***** -is
Beyond the reserve, there was no recourse against the dealer, Meyer Katz, for defaulted notes.
The facts which led up to the suit have been stipulated and can be summarized as follows: The above contract was executed on June 1, 1962. The reserve agreement appertained to 177 transferred accounts. The amount of the reserve thereby created was stipulated to be $4,551.75. The plaintiff requested a report of the status of the reserve in April, 1963 from Liberty Loan. The report was submitted on May 10th,. 1963, showing the reserve fund as depleted to a balance of $226.24. This accounting was almost completely erroneous.
The stipulation goes on to recite that the account was later corrected by the defendants after notice from the plaintiff. In plaintiff-appellant’s brief it is stated' that the defendants refused to correct the ac *552 counting -until after suit was filed in spite of repeated requests oyer a 12 month period, but there is nothing in evidence to support this.
The corrected accounting filed in these proceedings by the defendants is stipulated to be an accurate reflection of defendant’s books. The total reserve was shown as $4,511.75. $4,470.27 has been charged to the amount of $4,511.75, leaving a balance of $41.48.
This suit was filed on June 30, 1964. The defendants, Liberty Loan Company of Westwego and Liberty Loan Company of Louisiana answered, and later filed a supplemental answer and reconventional demand in which they allege that under the terms of the contract and in equity, they should be allowed to charge the dealer as per the corrected accounting filed in the suit, which would result in a recovery of $41.48 to the plaintiff.
The defendant, Liberty Loan Corporation, a Delaware Corporation, excepted to jurisdiction and answered in the alternative, and the exception was referred to the merits.
The Judge a qua gave judgment to the plaintiff against Liberty Loan Company of Louisiana, Inc. in the amount of $41.48 which is conceded to be due by the defendants. The exception of no jurisdiction raised on behalf of Liberty Loan Corporation, a foreign Corporation, was upheld and it was dismissed from the demands of the plaintiff.
The plaintiff has appealed. He has argued several grounds upon which to base recovery in this suit, and we shall treat them individually.
The first ground set up is that the plaintiff is entitled to the entire amount of the .reserve fund established because the defendants actively breached the terms of the contract, and thus a recission of the contract was in order. Article 1931 of the Civil Code states:
“A contract may be violated, either actively by doing something inconsistent with the obligation it has proposed or passively by not doing what was covenanted to be done, or not doing it at the time, or in the manner stipulated or implied from the nature of the contract.”
We do not think that the mere rendering of the erroneous account, especially where the defendants were in no way under a contractual obligation to supply the report (since the request was not made within the time requirements of Paragraph (D) of the agreement, supra), was “doing something inconsistent with the obligation” as contemplated by the Article. The accounting did not affect the funds themselves which were retained by the defendants. The funds were not thereby disposed of to the plaintiff’s detriment. The amount in reserve jv&s not specific coinage which was owed to the plaintiff and which was lost by the defendant’s attributing it to another account erroneously.
Active breach of a contract by an obligor automatically places him in default without necessity of any act on the part of the obligee. Civil Code Article 1932. If the breach is merely passive, it was necessary that the defendants be put in default by the plaintiff before the bringing of suit if he desired recission. Civil Code Article 1912.
We are willing to concede arguendo that a refusal to comply with a demand to correct the account would have placed the defendants in default, had this been proven. But the record is devoid of evidence to show that an actual demand was made and not complied with before suit. Plaintiff simply has not proven his case in this regard. The stipulation of facts merely states:
“ * * * the defendants, after having been placed on notice of the aforesaid improper use of the pledged fund, retracted all of the charges listed therein and returned the pledged money to plaintiff’s account.”
*553 We take note of the fact that the plaintiff is not now in any detrimental position with regard to the treatment of the reserve since the error has been corrected as per the contract.
Plaintiff argued that there was another breach of the contract in not remitting the excess reserve as per Paragraph (E) of the contract.
The request by the plaintiff for a report was submitted outside of the time limitations specified by Paragraph (D) for the defendants to be compelled to respond. This being so, there was no duty incumbent on defendants to provide a remittance with the gratuitous accounting and such co-operation with the plaintiff’s request will not be construed by this court to import a waiver of all rights afforded by clause (D). Therefore there was no breach shown in this regard.
A parallel argument for the return of the full amount of monies put into the reserve is that this agreement is one of pledge, and the pledgor is entitled to “call back” the thing pledged when the pledgee makes an improper use of it.
The trial court, in rendering its decision, concluded that this was a contract of pledge. We have some doubts as to the contingent, contractual money reserve being a contract of pledge. Rather, we think the reserve fund is the measure of a contingent adjustment to be made in the consideration for the sale of the notes. But nevertheless, even if this were a pledge, the same reasoning utilized in concluding the contract as not breached would apply. Article 3167 of the Civil Code states:
“The creditor is answerable agreeably to the rules which have been established under the title: Of Conventional Obligations, for the loss or decay of the pledge which may happen through his fault. * * *»
The mere erroneous rendition of an account in and of itself is not an improper use or abuse of the monies pledged, which was not to be considered as specific coin-age, but an amount owed.
An alternative argument advanced is that the plaintiff is entitled to $3,993.75, the amount of money pledged for accounts that have been paid. The basis for this conclusion is that each separate note was secured by a 10% pledge which is attributable to the particular note from which it was calculated, and to that note alone. Since the note was paid, the principal obligation was extinguished, and the pledge is extinguished as accessory to the principal obligation. Out of the 177 accounts transferred under the contract, 158 accounts have been paid. The amount fixed in the reserve for the 158 accounts is $3,993.75.
This argument is specious in that it flies in the face of the express intent found in the agreement:
IB. * * * Such deductions, together with those arising from all other sales and transfers hereunder, shall constitute a single Reserve, for use as provided in Paragraph (C) of this Section 1; provided that the Reserve shall be maintained as a contingent credit in the Dealer’s favor, and not as a segregated fund.
* * * * * *
This clause appears immediately prior to paragraph (C) which is hereinabove quoted. From a reading of these provisions it is obvious that Liberty Loan was to have the right to charge a defaulted note in full against the total reserve.
Appellant has also filed a motion to remand the matter in this court and argues in his appeal that the court did not adjudicate his alternative pleas; to wit, that he is entitled to the sum of $2,709.52 representing the “excess reserve” which by the terms of Paragraphs (D) and (E) was to be remitted with the reports submitted by the defendants. The argument reiterates the previous contention that the reporting dates were waived by the defendants.
*554 We hold that there is no necessity to remand the case, as plaintiff obviously has no claim for the remittance for the same reasons set forth in our previous discussion in dealing with the contention that the failure to submit the remittance was a breach of the contract entitling the plaintiff to recission.
In fine, the plaintiff has shown no just cause for complaint and the judgment must be affirmed. However, as previously stated, the stipulation recited that the total reserve established was stipulated to be $4,551.75, while the corrected accounting filed during the course of the proceedings showed it to be $4,511.75. Upon our check of these figures, we arrived at the figure of $4,541.75. The trial court gave judgment for $41.48, the difference between $4,511.75 and the amount charged against the reserve, $4,470.27. This appears to be a patent clerical error. Therefore, we amend the judgment to $71.48, the difference between the amount charged and $4,541.75.
Further, there appeared to be an oversight in the trial court’s judgment which failed to cast the defendant Liberty Loan Company of Westwego, Inc. Their liability coincides with that of Liberty Loan Company of Louisiana, Inc. as being party to the contract and the events which followed by virtue of the stipulation in evidence, and there is nothing in evidence to distinguish between the two as regards liability.
One final point must be disposed of. The plaintiff has complained of the trial court’s sustaining the exception of no jurisdiction as to Liberty Loan Corporation, the foreign corporation alleged to be domiciled in Delaware. The plaintiff asks the court to apply the “minimum contacts” doctrine over and above the question of whether or not the loan company was authorized to, or was doing business in the State.
The only evidence we have in the record to establish “minimum contacts” is that the contract called for notice of termination to be sent to an officer of Liberty Loan Company in St. Louis, Missouri, and that the erroneous report to the plaintiff was sent from Liberty Loan Corporation’s divisional office located in Houston, Texas, signed by a “Divisional Supervisor” and which refers to “the reserve with our offices in New Orleans.” We think that the facts showing the requisite contacts should have been more fully developed, even though the evidence tends to show affiliation among the companies. There is not sufficient evidence here to say that the trial judge reached an erroneous conclusion. Liberty Loan Corporation, the foreign Corporation, was not shown to be a party to the contract and the plaintiff has not shown its relationship to the local companies or that it was active in this state. For these reasons, the instant case is distinguishable from International Shoe Company v. State of Washington, etc., 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and Covington v. Southern Specialty Sales Company, La.App., 158 So.2d 79 (1963).
The judgment of the lower court, dated March 8, 1966, is amended to increase the award of $41.48 to $71.48, and is further amended to cast the defendants, Liberty Loan Corporation of La. and Liberty Loan Corporation of Westwego, Inc. in solido, and is affirmed in all other respects. Appellant is to bear the costs of this appeal.
Amended and affirmed.